IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA K. NUTALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 09 cv 2601 |
| | ) | |
| ADDUS HEALTHCARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR LIABILITY**

NOW COMES the Plaintiff, YOLANDA K. NUTALL, by and through her attorneys, the Law Offices of Cohen & Hussien, P.C., and for her Local Rule 56.1 Statement of Facts in Support of the Plaintiff's Motion for Summary Judgment for Liability, states as follows:

**I.    The Parties**

1. The Plaintiff is a former employee of the Defendant who was employed by the Defendant in this judicial district. At all times relevant hereto, the Plaintiff was a full-time, permanent employee of the Defendant for more than twelve months. The Plaintiff had also worked at least 1,250 hours over the previous twelve months with the Defendant. [Exhibit 1 - Complaint, Paragraph 2; Exhibit 2 - First Amended Answer to Complaint, Paragraph 2].

2. The Defendant was and continues to be an Illinois corporation, licensed and authorized to do business in this judicial district. At all times relevant hereto, the Defendant was

engaged in commerce or in any industry or activity affecting commerce that employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. [Exhibit 1 - Complaint, Paragraph 3; Exhibit 2 - First Amended Answer to Complaint, Paragraph 3].

## II. Jurisdiction and Venue

3. This Court has jurisdiction over the Plaintiff's FMLA claim pursuant to 28 U.S.C. § 1331, arising under 29 U.S.C. § 2617(a)(2). Venue is proper in this judicial district as the facts and events giving rise to the Plaintiff's claim occurred in this judicial district. [Exhibit 1 - Complaint, Paragraph 4; Exhibit 2 - First Amended Answer to Complaint, Paragraph 4].

## III. Violation of the Family and Medical Leave Act

4. In or about the first half of 2001, the Defendant hired the Plaintiff as a File Clerk; thereafter, the Plaintiff was promoted to several positions, including Service Coordinator, at the Defendant's South Cook 3360 branch office, located at 1125 W. 175th Street, Homewood, Illinois 60430 (herein "the Office") and held the position of Service Coordinator in 2008. [Exhibit 1 - Complaint, Paragraph 5; Exhibit 2 - First Amended Answer to Complaint, Paragraph 5].

5. The Defendant is a home care company that provides healthcare for adults. [Exhibit 3 - Deposition of Jason Branch, page 17, line 23 through page 18, line 1].

6. In or about June 2008, the Plaintiff provided the Defendant with notice of her intent to take medical leave beginning on August 8, 2008, to recover from a surgical procedure to be performed on her feet. [Exhibit 1 - Complaint, Paragraph 7; Exhibit 2 - First Amended

Answer to Complaint, Paragraph 7; Exhibit 4 - Deposition of Yolanda Nutall, page 27, lines 12-20].

7. After providing notice of her intent to take FMLA leave, Branch gave the Plaintiff a packet of documents that needed to be completed to request leave from the Defendant under the FMLA, including a doctor's certification. [Exhibit 3 - Deposition of Jason Branch, page 38, line 3 through page 41, line 8].

8. The Plaintiff completed all of the required documents, including a certification from her doctor. [Exhibit 1 - Complaint, Paragraph 8; Exhibit 2 - First Amended Answer to Complaint, Paragraph 8].

9. The Defendant granted the Plaintiff twelve (12) weeks of leave under the Family and Medical Leave Act (herein"FMLA"). [Exhibit 1 - Complaint, Paragraph 8; Exhibit 1 - Complaint, Exhibit A; Exhibit 2 - First Amended Answer to Complaint, Paragraph 8; Exhibit 5 - Requests for Admission, Paragraph 1; Exhibit 4 - Deposition of Yolanda Nutall, page 130, lines 16-19].

10. The Plaintiff's leave began on August 8, 2008, and expired on October 31, 2008. [Exhibit 1 - Complaint, Paragraph 8; Exhibit 1 - Complaint, Exhibit A; Exhibit 2 - First Amended Answer to Complaint, Paragraph 8; Exhibit 5 - Requests for Admission, Paragraph 1; Exhibit 4 - Deposition of Yolanda Nutall, page 75, lines 12-22].

11. During the Plaintiff's FMLA leave, the Defendant demanded and required the Plaintiff to use all of her accumulated vacation time. [Exhibit 4 - Deposition of Yolanda Nutall, page 31, line 21 through page 32, line 6; Exhibit 5 - Requests for Admission, Paragraph 4].

12. The Plaintiff received her last paycheck for her vacation time from the Defendant on or

about September 16, 2008. [Exhibit 1 - Complaint, Paragraph 9; Exhibit 2 - First Amended Answer to Complaint, Paragraph 9; Exhibit 5 - Requests for Admission, Paragraph 4].

13. On or about October 6, 2008, the Plaintiff was authorized by her doctor to return to work on October 7, 2008, to perform the duties she engaged in at the time of her leave, with no activity restrictions. [Exhibit 1 - Complaint, Paragraph 10; Exhibit 2 - First Amended Answer to Complaint, Paragraph 10].

14. As a result, the Plaintiff called the Office on October 6, 2008, and informed the receptionist that her doctor had released the Plaintiff back to work beginning on October 7, 2008. [Exhibit 4 - Deposition of Yolanda Nutall, page 61, lines 11-15, page 62, line 15 through page 63, line 21].

15. At that time, the Plaintiff expected to be returning to the Office as a Service Coordinator, because no one told the Plaintiff anything to the contrary. [Exhibit 4 - Deposition of Yolanda Nutall, page 40, lines 6-10, page 68, lines 14-16].

16. When the Plaintiff returned to the Office at 8:00 a.m. on October 7, 2008, the Plaintiff's supervisor, Jason Branch, (herein "Branch"), was not at the Office and so via a telephone conversation with the Plaintiff, Branch asked the Plaintiff to come back to the Office at 9:00 a.m. on October 8, 2008, to discuss her return to work. [Exhibit 1 - Complaint, Paragraph 12; Exhibit 2 - First Amended Answer to Complaint, Paragraph 12; Exhibit 4 - Deposition of Yolanda Nutall, page 60, line 21 through page 61, line 24].

17. Upon the Plaintiff's return to the Office on October 8, 2008, the Plaintiff presented Branch with a Certificate to Return to Work from her doctor which did not have any

4

activity restrictions. [Exhibit 1 - Complaint, Paragraph 13; Exhibit 1 - Complaint, Exhibit B; Exhibit 2 - First Amended Answer to Complaint, Paragraph 13; Exhibit 3 - Deposition of Jason Branch, page 59, line 22 through page 60, line 2; Exhibit 4 - Deposition of Yolanda Nutall, page 40, lines 11-13; Exhibit 5 - Requests for Admission, Paragraph 5].

18. On October 8, 2008, Branch informed the Plaintiff, for the first time, that while she was on leave, the Service Coordinator position previously held by the Plaintiff was filled by someone else. [Exhibit 1 - Complaint, Paragraph 14; Exhibit 4 - Deposition of Yolanda Nutall, page 69, line 9 through page 70, line 4; Exhibit 5 - Requests for Admission, Paragraph 6].

19. October 8, 2008, was the first time the Plaintiff found out that she would not be returning to the Office as a Service Coordinator. [Exhibit 4 - Deposition of Yolanda Nutall, page 69, line 9 through page 70, line 4].

20. As a result, Branch offered the Plaintiff the position of Field Supervisor at her current pay rate in addition to mileage reimbursement. [Exhibit 1 - Complaint, Paragraph 15; Exhibit 2 - First Amended Answer to Complaint, Paragraph 15; Exhibit 5 - Requests for Admission, Paragraph 7].

21. The Plaintiff informed Branch that due to her recent foot surgery, she could not perform the job functions of a Field Supervisor, which were completely different from a Service Coordinator. [Exhibit 1 - Complaint, Paragraph 17; Exhibit 4 - Deposition of Yolanda Nutall, page 70, lines 9-22; Exhibit 5 - Requests for Admission, Paragraph 12].

22. The Plaintiff also stated that she would have to go back to her doctor and let the doctor

      know that she was not being offered the Service Coordinator position but rather the Field Supervisor position. [Exhibit 4 - Deposition of Yolanda Nutall, page 78, line 16 through page 79, line 9].

23.    Branch informed the Plaintiff to return to her home, that he would discuss the job limitations with management, and that he would get back to her regarding her job status. [Exhibit 1 - Complaint, Paragraph 20; Exhibit 4 - Deposition of Yolanda Nutall, page 9, lines 15-24; Exhibit 5 - Requests for Admission, Paragraphs 14, 15, 16].

24.    As a result, the Plaintiff went back to her doctor on October 9, 2008. [Exhibit 4 - Deposition of Yolanda Nutall, page 76, lines 2-11].

25.    During her doctor's visit, the Plaintiff told the doctor about the field supervisor position that she was now being offered. [Exhibit 4 - Deposition of Yolanda Nutall, page 81, lines 17-19].

26.    The doctor told the Plaintiff to stay off her feet as much as possible and not to put a lot of pressure on her feet. [Exhibit 4 - Deposition of Yolanda Nutall, page 81, line 23 through page 82, line 3].

27.    After leaving the doctor's office, the Plaintiff called the Office on October 9, 2008, to say she got another doctor's note. [Exhibit 4 - Deposition of Yolanda Nutall, page 98, lines 16-19].

28.    The Plaintiff was told to bring the note to the Office on October 10, 2008. [Exhibit 4 - Deposition of Yolanda Nutall, page 98, line 20 through page 99, line 15].

29.    On October 10, 2008, the Plaintiff tendered to Serene Smith, an assistant agency director for the Defendant, a second Certificate to Return to Work from her doctor that restricted

6

the Plaintiff to light duty. [Exhibit 1 - Complaint, Paragraph 19; Exhibit 1 - Complaint, Exhibit C; Exhibit 2 - First Amended Answer to Complaint, Paragraph 19; Exhibit 4 - Deposition of Yolanda Nutall, page 5, lines 8-10; Exhibit 5 - Requests for Admission, Paragraph 13; Exhibit 6 - Deposition of Serene Smith, page 9, lines 12-13].

30. Serene took the note, stated she would give the note to Branch, and that the Plaintiff would be hearing from the Defendant. [Exhibit 4 - Deposition of Yolanda Nutall, page 46, line 22 through page 47, line 1, page 94, lines 2-17, page 128, line 16 through page 129, line 12; Exhibit 6 - Deposition of Serene Smith, page 22, lines 2-21].

31. By letter dated November 6, 2008, the Plaintiff was terminated effective immediately from her employment with the Defendant for alleged job abandonment. [Exhibit 1 - Complaint, Paragraph 21; Exhibit 1 - Complaint, Exhibit D; Exhibit 2 - First Amended Answer to Complaint, Paragraph 21; Exhibit 5 - Requests for Admission, Paragraph 17].

32. The duties and responsibilities of a Service Coordinator include office, desk, and clerical work to coordinate the services of clients and monitor the services of clients and field employees as it relates to their relationship with the Defendant. [Exhibit 3 - Deposition of Jason Branch, page 34, lines 5-9].

33. These duties and responsibilities include answering telephone calls, faxing documents, working on a computer, data entry, payroll and billing entry, filing, addressing staff complaints, doing placements, typing up care plans for clients, putting the care plans for clients into action, doing service monitor calls to the clients to ensure that they are getting the appropriate services that's on the plan of care, advocating for the client, occasionally doing 15 to 20 pounds of lifting, completing Question and Answer documents with

clients, and staffing the clients. [Exhibit 1 - Complaint, Paragraph 6; Exhibit 3 - Deposition of Jason Branch, page 34, lines 10-22; Exhibit 4 - Deposition of Yolanda Nutall, page 41, line 23 through page 42, line 12; Exhibit 5 - Requests for Admission, Paragraph 3; Exhibit 6 - Deposition of Serene Smith, page 35, lines 15-20].

34. The requirements of a Service Coordinator position were completed mainly indoors at the office while working at a desk. [Exhibit 4 - Deposition of Yolanda Nutall, page 76, lines 21-24; Exhibit 6 - Deposition of Serene Smith, page 34, line 20 through page 35, line 4].

35. According to Branch, a Service Coordinator would spend 80% of her time inside an office. [Exhibit 3 - Deposition of Jason Branch, page 35, lines 2-5].

36. "If you haven't gotten in contact with [a client] or if, you know, you can't contact them over the phone, you know, and you are worried about them or something you might send someone to go out there." [Exhibit 4 - Deposition of Yolanda Nutall, page 42, line 22 through page 43, line 5].

37. In those limited situations, a Service Coordinator would try to locate someone, like a field supervisor, if a regular homemaker is not in attendance or needed additional assistance for that day. " [Exhibit 4 - Deposition of Yolanda Nutall, page 77, lines 1-12, page 110, line 5 through page 111, line 11, page 114, lines 3-7].

38. If a Service Coordinator could not find someone, then the Service Coordinator herself would have to attend to the client. [Exhibit 4 - Deposition of Yolanda Nutall, page 110, line 5 through page 111, line 11, page 114, lines 3-7].

39. The amount of time spent by a Service Coordinator out in the field varied, because some homemakers showed up to work all the time and other workers did not. If the Service

Coordinator could not find someone to cover the position, as a last resort, the Service Coordinator covered the position. [Exhibit 4 - Deposition of Yolanda Nutall, page 115, line 16 through page 116, line 15].

40. Overall, it was not common for a Service Coordinator to go to a client's home. [Exhibit 4 - Deposition of Yolanda Nutall, page 114, lines 3-7].

41. Despite the limited times that a Service Coordinator went to a client's home, Branch put an end to Service Coordinators like the Plaintiff from going out to service clients. [Exhibit 4 - Deposition of Yolanda Nutall, page 80, line 22 through page 81, line 9].

42. When Branch was hired, he made it a point that Service Coordinators like the Plaintiff did not need to go out into the field because the Plaintiff was needed in the office. In other words, the office is where the Plaintiff was hired to be. [Exhibit 4 - Deposition of Yolanda Nutall, page 119, line 19 through page 120, line 11].

43. The duties and responsibilities of a Field Supervisor primarily include out-of-the- office field work, driving to clients' homes to supervise the Defendant's home care workers, getting in and out of an automobile, and being on one's feet. [Exhibit 1 - Complaint, Paragraph 16; Exhibit 3 - Deposition of Jason Branch, page 68, lines 5-16; Exhibit 5 - Requests for Admission, Paragraph 8].

44. Generally, a Field Supervisor is supposed to supervise the home care aides. [Exhibit 3 - Deposition of Jason Branch, page 68, lines 5-16].

45. For example, a Field Supervisor would make home visits to make sure that the home care aides are properly servicing the client, render in-home visit assessments depending on the client and what the service plan is for that particular client, and determine how often the

assessments have to be rendered. [Exhibit 6 - Deposition of Serene Smith, page 39, lines 2-21).

46. While at a client's home, a Field Supervisor also physically assists immobile clients in getting up and sitting down, changing a client's bed linens, making food, walking around the home, helping the client with household tasks, and dropping off a welcome pack. [Exhibit 4 - Deposition of Yolanda Nutall, page 21, line 16 through page 22, line 19, page 70, line 23 through page 71, line 20].

47. Field Supervisors also take clients to the doctor's office and to other appointments. This process would include assisting the client to and from an automobile, lifting and placing wheelchairs into the vehicle, if necessary, assisting the client into and out of the automobile, getting into and out of the automobile oneself, and assisting the client from getting from the automobile to the doctor's office or appointment. [Exhibit 4 - Deposition of Yolanda Nutall, page 19, line 16 through page 20, line 2, page 71, line 21 through page 72, line 8, page 110, lines 10-12].

48. Since the Plaintiff had previously been employed by the Defendant as a Field Supervisor, the Plaintiff was quite familiar with the above-referenced job duties and responsibilities and attested to the same during her deposition. [Exhibit 4 - Deposition of Yolanda Nutall, page 21, lines 4-14, page 109, lines 15-22].

49. Overall, a Field Supervisor position was mainly an outdoors position where one was constantly on the move. [Exhibit 4 - Deposition of Yolanda Nutall, page 76, lines 12-20, page 110, lines 3-9, page 111, lines 12-16).

50. And, with only one Field Supervisor in charge of over 1,000 clients, a Field Supervisor

was always on her feet, getting in and out of automobiles, and assisting with multiple clients on any given day, much more so than what is asked of a Service Coordinator. . [Exhibit 4 - Deposition of Yolanda Nutall, page 70, line 23 through page 71, line 20, page 76, lines 12-20, page 110, lines 3-9, page 111, lines 12-16; Exhibit 6 - Deposition of Serene Smith, page 41, line 24 through page 42, line 3, page 45, lines 1-5].

51. Even Branch admitted that a Field Supervisor is out in the field more often than a Service Coordinator. [Exhibit 3 - Deposition of Jason Branch, page 69, lines 9-12].

52. "They walk the house, ensure that there are safe pathways...they ask questions- did the employee come on time- things of that nature, supervising the employee. They are the administrative eyes and ears in the field." [Exhibit 3 - Deposition of Jason Branch, page 71, lines 5-10].

53. And Smith admitted that Field Supervisors are, "Only in the office to input things in the system, in the computer system, of their findings from the assessment." [ Exhibit 6 - Deposition of Serene Smith, page 40, lines 1-6].

54. With previous experiences as both a Service Coordinator and Field Supervisor, the Plaintiff knew that the two positions were completely dissimilar and that the recent surgery on her feet would cause too much wear and tear and prevent her from constantly being on her feet and dealing with the duties and responsibilities of a Field Supervisor. [Exhibit 4 - Deposition of Yolanda Nutall, page 77, line 24 through page 78, line 6].

Respectfully submitted,

Dated: August 31, 2010

s/ Michael Abel
One of the Plaintiff's Attorneys

Michael Abel
Edward Cohen
Law Offices of Cohen & Hussien, P.C.
Attorney Number: 39565
Attorneys for the Plaintiff
11330 S. Harlem Avenue
Worth, Illinois 60482
mabel@cohenandhussien.com
ecohen@cohenandhussien.com
(708) 361-3030